IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CATHERINE JOY MILLER                         Case No. 3:15-cv-02132-MA

               Plaintiff,                  OPINION AND ORDER

   v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

LAURIE B. MAPES
P.O. Box 1241
Scappoose, OR 97056-1241

     Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

LARS J. NELSON
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

     Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Catherine Joy Miller seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-403, and application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I affirm the Commissioner's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 3, 2012, Plaintiff protectively filed an application for a period of disability and disability insurance benefits. On August 2, 2012, Plaintiff filed an application for SSI disability benefits. In both applications, Plaintiff alleges disability beginning July 30, 2010, due to generalized anxiety disorder, ulnar neuropathy, acid reflux, post-traumatic stress disorder ("PTSD"), and carpal tunnel syndrome. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). An ALJ held a hearing on April 15, 2014, at which Plaintiff appeared with her attorney and testified. A vocational expert, Richard M. Hincks, also attended the hearing and testified. On June 24, 2014, the ALJ issued an unfavorable decision. Plaintiff submitted additional evidence to the Appeals Councils, but the Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1974, Plaintiff was 36 years old on her alleged onset of disability and 40 years old on the date of the ALJ's decision. Plaintiff has a high school diploma and has training in medical coding and billing, and one year of education as a medical assistant. Plaintiff has past relevant work

as a barista, referral clerk, billing coding clerk, front desk receptionist, appointment clerk, and medical file clerk.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

Plaintiff meets insured status requirements for a DIB application through December 31, 2014. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 31, 2010, her alleged onset date. At step two, the ALJ found that Plaintiff has the following severe impairments: bilateral ulnar neuropathy, left worse than right; carpal tunnel syndrome; PTSD/anxiety; and depression. At step three, the ALJ found that Plaintiff's impairment or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform light work but with the following limitations:

> with the capacity to lift and carry 20 pounds occasionally and 10 pounds frequently with otherwise no sitting, standing or walking limitation. She should do no climbing of ladders, ropes or scaffolds, do no more than occasional crawling, do no more than occasional overhead reaching the left (non-dominant) arm, and do no more than frequent fingering or handling bilaterally. She should avoid exposure to hazards such as unprotected heights and dangerous machinery. She should have no public

interaction, but she is able to work in proximity to co-workers if the work does not require teamwork.

Transcript of Record ("Tr.") at 26, ECF No. 10.

At step four, the ALJ found that Plaintiff is able to perform her past relevant work as a file clerk. Alternatively, the ALJ determined that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as document scanner and mailroom clerk. Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act from July 30, 2010, through the date of the ALJ's decision, June 24, 2014.

## ISSUES ON REVIEW

On appeal to this court, Plaintiff contends the following errors were committed: (1) the ALJ improperly evaluated her testimony; (2) the ALJ improperly evaluated the opinions of her treating physician Karen M. Erde, M.D., and her counselor Leslie Ann Gellert, LCSW; (3) the ALJ improperly concluded she could "frequently" handle and finger; and (4) the ALJ's unfavorable determination is not supported by substantial evidence because jobs do not exist in significant numbers that she can perform when her functional limitations are properly considered.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations

omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or

detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one

rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be

affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v.

Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir.

2014). Where "the Appeals Council considers new evidence in deciding whether to review a

decision of the ALJ, that evidence becomes part of the administrative record, which the district court

must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes

v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

## DISCUSSION

### I.    The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Credibility

#### A.    Standards

To determine whether a claimant's testimony regarding subjective pain or symptoms is

credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first

stage is a threshold test in which the claimant must produce objective medical evidence of an

underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina*,

674 F.3d at 1112; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage

of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear

and convincing reasons for discrediting the claimant's testimony regarding the severity of the

5 - OPINION AND ORDER

symptoms. *Garrison,* 759 F.3d at 1014-15; *Carmickle, v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

At the hearing, Plaintiff testified that she lives with her eight year old son who has Asperger's syndrome, and previously worked for two years as a receptionist, answering the phone, filing, interacting with patients, scheduling appointments, and assisting doctors as needed. Plaintiff stated that she stopped doing this job because she was having difficulty remembering things. Plaintiff testified that she lost a job as a receptionist at a physician's office because she was absent too much due to difficulties with her roommate. Tr. 48. Plaintiff later stated that she was let go from her medical receptionist job in July 2010 because she was making mistakes and snapping at patients. Tr. 66. Plaintiff testified that her hands were not a factor in her termination in 2010. Tr. 67. Plaintiff has previously worked in medical records briefly as a referral coordinator. Tr. 49. Plaintiff stated that she worked full time as a barista and did some managing, including scheduling shifts, hiring, and cashiering.

Plaintiff described a typical day as waking up, letting the dogs out, waking her son, getting him dressed, having coffee, then putting her son on the bus for school. Plaintiff described that she

6 - OPINION AND ORDER

next checks emails, then performs housework or grocery shopping. Tr. 51. Plaintiff stated that after

her son is done with school, she will take him to appointments, or assist with homework, take the

dogs for a walk, then spend some family time together before bed. Tr. 54. Plaintiff testified that she

needs to rest mentally for two to three hours each evening in order to function properly, otherwise

she is frazzled. Tr. 73.

Plaintiff stated that she volunteers with Meals on Wheels on Tuesdays and Fridays, and when

she is finished with delivering meals, or doing chores, she takes a rest because she is anxious. Tr.

51-52. Plaintiff described that when grocery shopping, she cannot go down aisles with more than

three or four people in them and she prefers to do her shopping first thing in the day so the store is

not crowded. Plaintiff stated that she does not always deliver meals each week, that she will only

go with her friends, and that it depends on how anxious she is when she wakes. Tr. 69.

Plaintiff testified that she began to have difficulty with her hands in 2011, and can use the

computer for 10 minutes before they start to go numb and can only work on the computer for an hour

and a half before needing to stop. Tr. 55. Plaintiff testified she also has difficulty chopping

vegetables and vacuuming because of her hands. Tr. 56. Plaintiff wears braces on her elbows so her

arms stay straight and acknowledged that her doctor has recommended surgery. Tr. 56.

Plaintiff testified that she is in counseling due to her anxiety. Tr. 56. Plaintiff described that

her relationship with her son's father was physically and emotionally abusive. Tr. 58. Plaintiff

stated that she has been excessively worried about the father kidnapping her son. Tr. 59. Plaintiff

described that she takes medications for insomnia and that she sleeps "so-so." Tr. 61. Plaintiff takes

Lexipril for anxiety and Klonopin for her panic attacks, which makes her sleepy. Tr. 61. Plaintiff

described that she has panic attacks a couple of times each month. Tr. 61. Plaintiff takes minipress

7 - OPINION AND ORDER

for her nightmares. Tr. 63. Plaintiff does not take any pain medication for her wrists or arm pain. Tr. 62.

In an April 19, 2012 Function Report - Adult, Plaintiff indicated that she cares for her son, cares for her pets, she prepares her own meals, and has no difficulty with self-care. Plaintiff noted she is able to do laundry, clean the house, and plant flowers. Plaintiff noted that she is able to go outside every day, can walk, drive and use public transportation. Plaintiff shops for groceries once a month and clothing as necessary. Plaintiff has no difficulty with handling her own finances. Plaintiff indicated she enjoys reading, watching television, crossword puzzles, playing with her son, and cooking. Plaintiff is able to cheer her son while he plays soccer once a week, and goes to the park, community center and to homes of friends. Plaintiff described that she has weakness in her hands, that she has trouble lifting, squatting, standing, kneeling, climbing stairs, completing tasks, and with her memory and concentration. Plaintiff described that she can pay attention for two hours, but sometimes needs to have instructions repeated several times. Plaintiff noted that she does not handle stress well, and has a hard time with changes. Tr. 270-77.

In a Pain & Fatigue Questionnaire, Plaintiff described aching and numbness in her hands and feet sometimes. She noted the pain is daily and can last for hours and is exacerbated by over-use of her hands and typing for more than one hour. Tr. 291. Plaintiff noted that she sometimes needs to nap for an hour to an hour and a half, and that she can be up and busy for five to six hours before needing to rest. Tr. 291.

In a May 2012 disability report, Plaintiff indicated that the pain in her hands had worsened, so that she can no longer use a manual can opener; she has a sprained rotator cuff, and a new

8 - OPINION AND ORDER

diagnosis of plantar faciatis. Tr. 297.  Plaintiff noted she has difficulty lifting more than 15 pounds, difficulty with cold temperatures, dizziness, and that her anxiety has increased. Tr. 300-01.

In the decision, the ALJ found that plaintiff's impairments could reasonably be expected to cause some symptoms, but that her statements concerning the limiting effects were not entirely credible. The ALJ cited three reasons for discounting plaintiff's credibility: (1) inconsistency with objective medical evidence; (2) history of conservative treatment; and (3) plaintiff's inconsistent statements.

The ALJ provided specific, clear and convincing reasons, backed by substantial evidence, for discounting the severity of Plaintiff's symptoms. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). The ALJ discounted plaintiff's credibility because the severity of her upper extremity limitations was not supported by the objective medical evidence and was being treated conservatively. Here, as the ALJ accurately found, the medical record shows that plaintiff's ulnar neuropathy causes some difficulties and weakness, but it did not prevent her from performing all activities. To be sure, the ALJ thoroughly discussed that plaintiff sought treatment for pain, weakness, and numbness in her upper extremities. Tr. 27, 356, 411, 416.  Indeed, her physicians reported it as mild, and that she was treating it with wrist and elbow braces. As the ALJ indicated, in a May 31, 2012 treatment note, Plaintiff's treating physician Dr. Erde would not sign disability paperwork because her ulnar neuropathy is treatable and not a cause of long term disability. Tr. 474. The record contains no evidence of the underlying EMG or nerve conduction studies themselves, and no evidence of continuing care with a neurologist. Tr. 411, 519. Although Plaintiff contends that her hands go numb after one hour on the computer, as the ALJ noted, there are no EMG/nerve conduction studies verifying carpal tunnel. Additionally, as the ALJ accurately noted, Plaintiff did

9 - OPINION AND ORDER

not pursue any type of surgical consultation or intervention to alleviate her ulnar neuropathy and she takes no pain medication for the condition. Tr. 28. The ALJ's findings are supported by substantial evidence. Therefore, the ALJ reasonably found Plaintiff's upper extremity symptoms were not as limiting as she alleged, and the ALJ appropriately discounted her credibility on this basis. *See Chaudhry*, 688 F.3d at 672 (finding unexplained or inadequately explained failure to seek treatment is a specific, clear and convincing reason to discredit claimant); *Tommasetti*, 533 F.3d at 1039 (finding conservative treatment for pain undermined claimant's allegation that it was disabling).

With respect to plaintiff's PTSD and mental impairments, the ALJ discounted her allegations as unsupported by the objective medical record and that her symptoms were well managed with medication. *See Parra v. Astrue,* 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that evidence of conservative treatment is sufficient to undermine claimant's credibility). This finding also is supported by substantial evidence. For example, as the ALJ discussed, plaintiff established care with Dr. Krishnasamy in September 2010 and complained of depression and anxiety. Tr. 445. As the ALJ indicated, Plaintiff was "significantly improved" by November 2010 after starting nortriptyline, and she reported to Dr. Krishnasamy that she hardly needed the clonazepam for breakthrough anxiety. Tr. 439. Indeed, in an April 25, 2012 Mental Status Report, Dr. Krishnasamy opined that Plaintiff's depression was under control, although her anxiety was active. Tr. 406. Dr. Krishnasamy also indicated that Plaintiff was not limited in her activities by her anxiety, Plaintiff's social functioning was good, and that she reported no limitations in concentration, persistence and pace. Tr. 407-08. As the ALJ noted, on May 31, 2012, Dr. Erde opined that Plaintiff's depression was not disabling. Tr. 28, 474.

Plaintiff complains that the ALJ cherry-picked the record and that her mental health symptoms tended to wax and wane throughout her course of treatment. The ALJ reviewed Plaintiff's mental health records and found that they generally reflect positive responses to medication, with situational stressors, and concluded that her symptoms supported only mild impairments. Tr. 27-29, 429, 435, 437, 439, 484, 506, 508, 510, 512, 516, 519, 521, 523, 531. Even if the record supports Plaintiff's interpretation, the ALJ's interpretation of the longitudinal record is a reasonable one, and it is not the court's role to second-guess it. *See Rollins v. Massanari*, 261 F.3d at 857 (holding reasonable interpretations supported by substantial evidence may not be second-guessed).

Finally, the ALJ discounted Plaintiff's credibility based on inconsistencies in Plaintiff's testimony concerning her motivation to work. Tr. 30. The ALJ highlighted treatment notes reflecting that Plaintiff wanted to go back to school instead of work to provide a better income, that Plaintiff described difficulties caring for her son and was having trouble with his school, and that she did not want to pursue surgery for her ulnar neuropathy because she had no one to care for her son while she recovered post-operatively. Tr. 30-31, 377, 380, 382, 383, 385, 429, 436, 437, 513, 556. The ALJ explained that she empathized with Plaintiff's situation, but found her statements undermined her allegation that she is unable to work due to her impairments, as opposed to her desire to parent her special-needs son. Tr. 31. The ALJ's findings are backed by substantial evidence. The court shares the ALJ's sentiments that caring for a child is a parent's greatest calling and recognizes that such a task is all the more difficult as a single parent. However, I cannot conclude that the ALJ's adverse inference is an unreasonable interpretation of the evidence. *See Tommasetti*, 533 F.3d at 1040 (ALJ permissibly discredited claimant based on inconsistent statements about motivation to work); *Molina*, 674 F.3d at 1111 ("Even when the evidence is

11 - OPINION AND ORDER

susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

In short, the ALJ articulated specific, clear and convincing reasons for the adverse credibility determination that are backed by substantial evidence in the record as a whole. The ALJ did not err.

## II.    The ALJ Properly Considered the Medical Evidence

### A.    Standards

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle,* 533 F.3d at 1164. To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Garrison,* 759 F.3d at 1012; *Ghanim,* 763 F.3d at 1161. When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). In addition, a doctor's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than fully credible. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson,* 359 F.3d at 1195.

Only physicians and certain other qualified specialists are considered "[a]cceptable medical sources." *Molina,* 674 F.3d at 1111 (alteration in original); *see also* 20 C.F.R. § 416.913(a). Nurse practitioners and therapists are considered "other sources." 20 C.F.R. § 416.913(d). An ALJ must evaluate the opinions from other sources, and may discount such testimony if the ALJ provides germane reasons for doing so. *Ghanim,* 763 F.3d at 1161; 20 C.F.R. § 416.927(c).

B.    *Treating Physician Dr. Erde*

Plaintiff contends that the ALJ failed to provide sufficient reasons for discounting two opinions of Dr. Erde, her treating physician from May 2012 through September 2014. In the first opinion, Dr. Erde completed a Work Release for the Oregon Department of Human Services Vocational Rehabilitation ("DHS work release") program on July 15, 2013, indicating that Plaintiff is capable of working two to three hours a day, five days a week. Tr. 482. Dr. Erde indicated that Plaintiff has been diagnosed with PTSD, ulnar neuropathy, and carpal tunnel, and needs to limit her computer time to less than one hour, and needs to work in a low stress environment. Tr. 482. In the second opinion dated April 2014, Dr. Erde opined that Plaintiff would miss four or more days per month of employment due to her panic disorder and PTSD. Tr. 587. Dr. Erde further indicated that Plaintiff would require additional breaks of one to two hours due to fatigue and overwhelming rumination from her anxiety. Tr. 587. Dr. Erde opined that Plaintiff does not have any limitations on standing, walking or sitting in an eight hour day, but could perform no reliable activity in the areas of lifting, carrying, handling, or fingering, and could only occasionally reach. Tr. 588. Finally, in the April 2014 opinion, Dr. Erde opined that Plaintiff suffers no limitations with activities of daily living and social functioning, is markedly limited in the maintaining concentration, persistence and pace, and would suffer three episodes of decompensation within a 12 month period, each at least two weeks in duration. Tr. 590.

Dr. Erde's opinions are contradicted by those of Plaintiff's prior treating physician, Prasanna V. Krishnasamy, M.D., examining psychologist Keli J. Dean, Psy.D., and nonexamining agency physicians Kordell N. Kennemer, Psy.D., Joshua Boyd, Psy.D., Sharon B. Eder, M.D., and Richard

Alley, M.D. Tr. 98, 101, 112, 115, 406-08. Therefore, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Erde's opinions.

In the decision, the ALJ discounted Dr. Erde's April 2014 opinion because it is not supported by other record evidence. Inconsistency with objective medical evidence is a specific and legitimate reason to discount a treating physician's opinion. *Batson*, 359 F.3d at 1196 (ALJ may discredit treating physicians' opinions that are unsupported by objective medical findings or the record as a whole); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide clear and convincing reasons for ALJ to reject treating physician's opinion). Here, the ALJ rejected Dr. Erde's opinion that Plaintiff would suffer three episodes of decompensation within 12 months, each for a duration of two weeks, because it is wholly unsupported by any record evidence whatsoever. As the ALJ detailed, the record is devoid of *any evidence* that Plaintiff has suffered even one episode of decompensation previously, let alone that she would suffer three in 12 months if she returned to full-time employment. Tr. 29. To the contrary, the record demonstrates that Plaintiff reported improvement in her PTSD, depression, and anxiety with medication. Tr. 429, 435, 437, 439, 484, 506, 508, 510, 512, 516, 519, 521, 523, 531. The ALJ's finding is supported by substantial evidence and singularly calls into question the validity of Dr. Erde's opinions. This reason alone provides a specific and legitimate basis for rejecting Dr. Erde's opinions and would constitute a clear and convincing reason if a higher level of justification was required.

Additionally, the ALJ correctly found that Dr. Erde's opinion that Plaintiff suffers "marked" limitations with concentration, persistence and pace is inconsistent with other record evidence. As the ALJ detailed, Plaintiff reported to Dr. Erde that she is able to concentrate in school, despite some anxiety. Tr. 28-29, 473. Similarly, Plaintiff reported no difficulties with concentration, persistence

14 - OPINION AND ORDER

and pace to Dr. Krishnasamy. Tr. 406-08. And, as the ALJ detailed, Plaintiff's counselor Leslie Ann Gellert's treatment notes routinely reflect no difficulties with concentration, attention, or memory. Tr. 29, 503, 508, 510, 512, 513, 516, 547, 551, 554. Continuing, the ALJ found that Dr. Erde's 2014 opinion that Plaintiff suffered no limitations in the area of social functioning was inconsistent with Plaintiff's report that she is uncomfortable in crowds and groups of people. The ALJ's findings are wholly supported by substantial evidence in the record. Thus, the ALJ reasonably discounted Dr. Erde's 2014 opinion based on its inconsistency with other evidence, and readily provides a specific and legitimate basis for discounting the 2014 opinion.

Turning to Dr. Erde's July 2013 DHS work release opinion that Plaintiff was limited to modified employment of ten hours of work per week, with only one hour of computer work, Plaintiff contends that the ALJ's reasoning is not supported by substantial evidence. I disagree.

Here, the ALJ discounted that opinion as inconsistent with Dr. Erde's May 31, 2012 treatment notes, an absence of clinical findings, and based on Plaintiff's previously discounted self-report. The ALJ stated that the "assessment is given very limited weight, particularly as it clashes with Dr. Erde['s] assessment of less than one month prior." Tr. 28.

Dr. Erde examined Plaintiff on July 15, 2013, at which time Plaintiff reported that she could not perform computer work for more than one hour without her hands going numb. Tr. 556. Dr. Erde included this specific limitation in the July 2013 DHS work release opinion limiting Plaintiff to modified work. Tr. 482. Dr. Erde's contemporaneous July 15, 2013 treatment notes contain no objective examination findings, such as range of motion, grip strength, sensory or other testing performed by Dr. Erde. Therefore, the ALJ reasonably concluded that Plaintiff's allegation that she was limited to one hour of computer time was based on Plaintiff's self-report. As discussed above,

the ALJ reasonably discounted Plaintiff's self-reported symptoms concerning the severity of her upper extremity limitations, and therefore, the ALJ could discount the July 2013 opinion on this basis. *See Tommasetti,* 533 F.3d at 1041 (ALJ may discount treating physician's opinion when based on claimant's properly discounted self-reports). This reasoning provides a specific and legitimate basis to reject Dr. Erde's July 2013 DHS work release opinion.

Although ALJ appeared to consider Dr. Erde's May 31, 2012 treatment notes as occurring just one month prior to the July 2013 opinion (noting it "clashes"), I conclude any error in the dates of Dr. Erde's examinations is harmless. *Molina,* 674 F.3d at 1111 (the court may "not reverse an ALJ's decision on account of an error that is harmless"). The ALJ extensively discussed Dr. Erde's May 31, 2012 treatment notes. In the decision, the ALJ discussed that Plaintiff established care with Dr. Erde on May 31, 2012. As the ALJ noted, in the May 2012 examination, Dr. Erde noticed a decreased range of motion in Plaintiff's upper right extremity with a slight loss of finger grip bilaterally and sensory deficit on the right digits four and five. Tr. 474. As the ALJ accurately indicated, despite these findings, Dr. Erde was unwilling to sign disability paperwork at that time because Plaintiff's ulnar neuropathy was treatable and she did not appear to have disabling depression. Tr. 28, 473-74. Moreover, the ALJ discussed that Plaintiff takes no pain medications for her alleged upper extremity pain, and that no surgical consultation had been ordered or pursued. As the ALJ noted, Plaintiff reported to Dr. Erde on July 15, 2013, that she felt she could not undergo surgery because she had no one to care for her son while she recovered post-operatively. Tr. 28, 556. The ALJ's findings in this regard are supported by substantial evidence. Thus, the ALJ reasonably discounted Dr. Erde's 2013 opinion as inconsistent with her May 2012 treatment notes. *Valentine,* 574 F.3d at 692-93 (holding that inconsistency with treatment notes is a specific and legitimate

reason to reject treating physician's opinion). Accordingly, I conclude that the ALJ has provided specific and legitimate reasons for discounting Dr. Erde's July 2013 opinion.

Contrary to the ALJ's finding that no neurology consultation was ever conducted, Plaintiff was examined by Conrad Liang, M.D., a neurologist on December 7, 2012. Tr. 489. That treatment note shows that EMG testing indicated ulnar neuropathy in the right and left arms, but that Plaintiff complained of symptoms more consistent with carpal tunnel. Dr. Liang noted the studies indicated "pretty mild" symptoms and recommended elbow and wrist braces, and that if not successful, decompression surgery is an option. Tr. 489. Additionally, a May 11, 2012 treatment note from Dr. Krishnasamy also indicates mild bilateral ulnar neuropathy on EMG or nerve conduction studies. Tr. 411. However, consistent with the ALJ's finding, the record does not contain the underlying objective nerve conduction or EMG test results nor is there any objective evidence or nerve conduction studies verifying carpal tunnel. Tr. 28. Additionally, as the ALJ correctly indicated, the record is devoid of any surgical consultation or further neurological work-up. Given the severity of Dr. Erde's July 2013 opinion in light of Dr. Erde's records as a whole, I conclude that the ALJ could reasonably discount Dr. Erde's opinion based on its inconsistency and absence of clinical findings. *Valentine*, 574 F.3d at 692-93. Because the ALJ's interpretation of the evidence is a rational one, it will not be disturbed. *Batson,* 359 F.3d at 1193. Alternatively, even if the ALJ erred in discounting Dr. Erde's opinion because no neurological consultation was performed, any such error is harmless because the ALJ identified other reasons, when taken together, that readily supply specific and legitimate reasons for discounting Dr. Erde's opinions. *Molina*, 674 F.3d at 1111.

////

////

17 - OPINION AND ORDER

C.    *Leslie Ann Gellert, LCSW*

Although Ms. Gellert is not an acceptable medical source, she worked as a behavioral specialist in the same office as Dr. Erde. Although it is not clear from the record before me whether Ms. Gellert worked closely under the direction and supervision of Dr. Erde, I give Plaintiff the benefit of the doubt and apply the higher specific and legitimate standard to the ALJ's reasoning. *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (discussing that for nurse practitioner to be an "acceptable medical source," there must be evidence of close supervision by physician); *Bustamonte v. Colvin*, No. CV-13–2080-PHX-ESW, 2015 WL 136016, *6-8 (D. Ariz. Jan. 9, 2015) (discussing application of germane reasons versus specific and legitimate standards to nurse practitioner's opinion).

Ms. Gellert began treating Plaintiff in January 2013 for her anxiety and PTSD. On July 5, 2013 in a DHS work release, Ms. Gellert opined that Plaintiff is unable to work due to symptoms from her PTSD. Tr. 481. Gellert's opinion is contradicted by Drs. Krishnasamy, Kennemer, and Boyd. Tr. 98, 112, 406-08. In the decision, the ALJ gave this opinion "little weight" because it is inconsistent with Ms. Gellert's own treatment notes, and inconsistent with Plaintiff's reported symptoms. Tr. 29. The ALJ's reasoning readily provides a specific and legitimate basis for discounting Ms. Gellert's opinion.

As the ALJ detailed, despite opining that Plaintiff is unable to return to gainful employment, Ms. Gellert's treatment notes consistently reflect relatively mild symptoms. As detailed above, Ms. Gellert routinely indicated that Plaintiff's mood, affect, orientation, judgment, insight, and memory were all within normal limits. Tr. 29, 503, 508, 510, 512, 513, 516, 547, 551, 554. And, as the ALJ accurately noted, Ms. Gellert's PHQ-9 scores consistently reflect mild or minimal symptoms. Tr.

552 (indicating a score of four out of 27 in Plaintiff's previous three visits). And, as the ALJ indicated, the severity of symptoms in Ms. Gellert's opinion is inconsistent with other record evidence reflecting that Plaintiff reported she was rarely using Clonazepam for her panic attacks, was sleeping better with decreased nightmares, and in December 2013, Plaintiff reported only having one panic attack the previous year. Tr. 549, 569. The ALJ's findings are wholly supported by substantial evidence in the record. Therefore, the ALJ reasonably could rely on these inconsistencies to discount Ms. Gellert's opinion. *Valentine,* 574 F.3d at 692-93 (inconsistencies between physician's opinion and own treatment notes is a specific and legitimate basis to reject opinion). Accordingly, the ALJ did not err.

      D.     *Dr. Erde and Ms. Gellert's opinions submitted to the Appeals Council*

      While Plaintiff's appeal was pending before the Appeals Council, Plaintiff submitted a September 4, 2014 letter from Dr. Erde and a July 15, 2015 Mental Health Function Assessment from Ms. Gellert. The Appeals Council accepted and considered the evidence and made it part of the record. Tr. 5. Therefore, the court must examine the administrative record as whole to determine whether in light of the new evidence that the ALJ's opinion is supported by substantial evidence. *Brewes*, 682 F.3d at 1165.

      In the September 2014 letter, Dr. Erde wrote that Plaintiff has not improved since December of 2013, and that it would be exceedingly difficult for Plaintiff to maintain fruitful employment. Tr. 592. Dr. Erde indicated that the pressures and demands of working as an administrative assistant destabilized Plaintiff's emotional control. Tr. 592. According to Dr. Erde, upon reflection, she believes that her initial treatment notes did not adequately capture the severity of Plaintiff's condition. Dr. Erde then indicates that Ms. Gellert's treatment notes "bring out the degree of

19 - OPINION AND ORDER

limitation" that Plaintiff suffers. Tr. 592. Dr. Erde's 2014 letter, in light of the record as a whole, does not alter the conclusion that the ALJ's decision remains supported by substantial evidence. As discussed above, the ALJ appropriately discounted Dr. Erde and Ms. Gellert's opinions. Although Dr. Erde suggests that her notes be interpreted differently, the ALJ's interpretation is a reasonable one, and will not be disturbed. *Molina*, 674 F.3d at 1111 (rational interpretations of the record must be upheld if they are supported inferences reasonably drawn from the record).

In Ms. Gellert's July 2015 Mental Health Function Assessment, Gellert opined that Plaintiff was substantially limited in her abilities to maintain regular attendance, make simple work decisions, and complete a normal workday without interruptions from psychologically based symptoms. Tr. 594. Ms. Gellert indicated that Plaintiff may need more than customary breaks. Tr. 595. Ms. Gellert also opined that Plaintiff has marked limitations in her activities of daily living and that she would suffer three episodes of decompensation within a 12 month period, each lasting for two weeks in duration. Tr. 595.

As discussed above when rejecting Dr. Erde's opinion, there is no evidence whatsoever in the record before me to support a finding that Plaintiff has suffered even one episode of decompensation, let alone that she would suffer *three within 12 months* if she were to return to work. Thus, Ms. Gellert's opinion is so wildly off the mark it calls her opinions into doubt. As noted above, the severity of Ms. Gellert's opinion concerning Plaintiff's functioning is undermined by her own treatment notes that reflect relatively mild findings. Additionally, Ms. Gellert's opinion that Plaintiff is markedly limited in her activities of daily living also is undermined by the record as a whole. To be sure, Plaintiff testified at the hearing that she cooks, cleans, does laundry, is able to care for her own finances, is capable of all self care, and is solely responsible for her special needs

20 - OPINION AND ORDER

son. Plaintiff reported that she enjoys crossword puzzles and reading, cheers her son while he plays soccer, takes her son to appointments, walks, drives and is able to use public transportation. Tr. 273-74. Additionally, Plaintiff's prior treating physician, Dr. Krishnasamy opined that Plaintiff had no limitations in her activities of daily living. Tr. 406-08.

To be sure, as the ALJ indicated, the longitudinal picture of Plaintiff reveals that she suffers some anxiety, but that it has been adequately managed with medication and counseling. Although Plaintiff's mental health symptoms tend to wax and wane with situational stressors, contrary to Ms. Gellert's and Dr. Erde's opinions, there is simply no evidence of decompensation in the record or marked restrictions in her activities of daily living. Thus, I conclude that the ALJ's findings discounting Dr. Erde and Ms. Gellert's opinions are supported by substantial evidence in the record as a whole, even in light of the additional evidence submitted to the Appeals Council. *Brewes*, 682 F.3d at 1163.

## III. ALJ's Misstatement about Handling and Fingering is Harmless

Plaintiff contends that the ALJ erred in assessing her RFC, highlighting an inconsistency between the ALJ's stated RFC (Tr. 26) finding that Plaintiff can perform "frequent fingering or handling bilaterally" and the ALJ's later statement in the narrative RFC discussion that she can do no more than "occasional fingering or handling bilaterally" (Tr. 31). According to Plaintiff, the correct interpretation of the record limits her to "occasional" fingering and handling because it is supported by Dr. Erde's opinion that Plaintiff has "no reliable ability" to handle and finger. Tr. 588. Plaintiff contends that when the ALJ's finding is properly credited, she is disabled based on the vocational expert's ("VE") testimony. Tr. 86-87. The Commissioner contends that the discrepancy between the RFC and later narrative discussion is a scrivner's error. The Commissioner is correct.

Having reviewed the record, it appears that the ALJ's mention of "occasional" handling and fingering is a typographical error. When discussing Plaintiff's upper extremity limitations, the ALJ gave little weight to the opinion of Richard Alley, M.D., who opined that Plaintiff was limited to no more than occasional overhead reaching on the left, but otherwise could perform unlimited fingering and handling. Tr. 30, 126-27. The ALJ found that Plaintiff's limitations with respect to manipulation, reaching, climbing and crawling would be greater than those assessed by Dr. Alley. Tr. 30. In contrast, the ALJ discredited Dr. Erde's opinion that Plaintiff had no reliable ability to lift, carry, finger or handle. Tr. 29, 588. At step four, the ALJ concluded that Plaintiff is capable of performing her past relevant work as a file clerk. The ALJ also made an alternative step five finding that a person with the same vocational profile as Plaintiff would be capable of performing the representative occupations of document scanner and mailroom clerk. Tr. 31-32. These occupations are consistent with the hypothetical questions posed to the VE at the hearing that included a limitation to frequent handling and fingering. Tr. 84-85.

In short, Plaintiff identifies no credited testimony that she is limited to occasional handling and fingering bilaterally. As discussed at length above, the ALJ properly discounted Dr. Erde's opinion concerning Plaintiff's upper extremity limitations as inconsistent with Plaintiff's conservative treatment and lack of objective support. And, the ALJ properly discounted Plaintiff's own testimony of severe limitations from her ulnar neuropathy. Indeed, the ALJ's mention of "occasional" in the RFC analysis appears to have been a typographical error. To the extent that the ALJ erred in making the statement, the error is harmless because that finding was not determinative of the ALJ's overall analysis and the decision is otherwise consistent with the medical evidence and the VE's testimony. *See Molina*, 674 F.3d at 1111 (discussing harmless error); *Gervais v. Colvin*,

22 - OPINION AND ORDER

No. EDCV 12-1115-JPR, 2013 WL 3200518, *6 (C.D. Cal. June 24, 2013) (finding transcription error harmless); *see also Wright v. Comm'r Soc. Sec. Admin.*, 386 F. App'x 105, 109 (3d Cir. 2010) (Tashima, J., sitting by designation) (ALJ's misstatement in decision harmless error where ALJ gave an adequate explanation supported by substantial evidence in the record); *Taylor v. Astrue*, No. 4:07-CV-160-FL, 2009 WL 50156, at *10 (E.D. N.C. Jan.7, 2009) (ALJ's misstatement of claimant's RFC in one sentence of decision "akin to a typographical error and constitutes harmless error" where the ALJ correctly stated RFC elsewhere in opinion, was consistent with hypothetical posed to VE and was supported by substantial evidence).

## IV.    The Commissioner Met His Burden at Step Five

Plaintiff contends that the ALJ erred in relying upon the VE's testimony because it did not contain all of her limitations. I have not identified any harmful errors in the ALJ's evaluation of the evidence. The hypothetical posed to the vocational expert included all of Plaintiff's limitations credited by the ALJ and supported by substantial evidence in the record. *Bayliss*, 427 F.3d at 1217. Accordingly, the ALJ could rely upon the VE's testimony. The ALJ did not err at steps four and five.

////

////

////

////

////

////

////

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this _2/_ day of NOVEMBER, 2016.

*Malcolm F Marsh*
Malcolm F. Marsh
United States District Judge